IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 22-cr-00180-REB-JMC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRYAN CORNWELL,

    Defendant.

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RENEWED DETENTION HEARING [ECF #37]**

The United States of America, by and through United States Attorney Cole Finegan and Assistant United States Attorney Jeffrey K. Graves, respectfully responds to the Defendant's Motion for Renewed Detention Hearing [ECF #37] as follows:

The Defendant proffers a letter from Dr. Susan Coykendall as the new information required to reopen detention. First, Dr. Coykendall expressly stated she has not completed her evaluation. *See* [ECF #34] ("I am writing to update you in regard to the evaluation I am in the process of completing…") (emphasis added). Although Dr. Coykendall avers she has completed several tests, none were provided to this Court or the Government.[1] *Id*. Instead, Dr. Coykendall characterizes the results as "valid" without explanation. *Id*. In short, Dr. Coykendall's letter boils down to the fact that she is

---

[1] On August 5, 2022, the undersigned attorney requested the tests by email from defense counsel, who asserted essentially that he did not have copies either.

1

personally not concerned about the Defendant without providing adequate detail to evaluate her conclusion.[2]

But that judgement is for this Court through the lens of 18 U.S.C. 3142(g). The nature and circumstance of this crime involving terroristic threats of explosives rmeain gravely serious. *See* Defendant Interview, Detention Exhibit 4, admitted at [ECF #18] ("Ex. 4"); 18 U.S.C. §3142(g)(1). In his interview with the FBI, the Defendant described his extensive history in using explosives; "yeah, I know a lot about it, I'm a very intelligent person. I've thrown hundreds of fucking charges. I've set off thousands and thousands of pounds." Ex. 4 at 16:28. The Defendant explained that "you can go to fucking any feed store in this fucking country and get a bag of ammonium nitrate and you can go to any fucking gas station in the country and get a fucking can of diesel fuel, and all you're doing is spraying it on; I mean, it's not that fucking hard." *Id*. at 20:22.[3] When discussing the text about the ANFO, the Defendant confirmed that "ANFO is incredibly easy to make." *Id*. at 26:35. Later in the interview, the Defendant offered, "why – why do these explosion things happen? Why do these mass shooting things happen? Because us as a society behave like this." Ex. 4 at 42:20. When asked how he would accomplish these attacks against a number of people at once, the Defendant said, "let's just say I'm not a dumb person…I'm just going to say it's possible." *Id*. at

---

[2] The Government recognizes that Defendant apparently intends to call Dr. Coykendall as a witness at hearing, which will likely provide the Court and Government additional details and an opportunity from cross-examination.

[3] This description makes the Defendant's "plan, if released…to finish a soil amendment contract where he is to provide a local farmer treated, liquid compost" concerning. [ECF #37].  Although the Government is not aware what process the Defendant proposes to use for the soil contract, it's clear that any condition of release would require him to stay away from anywhere he could purchase ammonium nitrate.

49:50. Further, the poisonously angry demeanor of the Defendant during the interview is open and obvious.

The same evidence shows that the weight of the evidence against the Defendant is strong. 18 U.S.C. § 3142(g)(2). The Defendant admitted to sending the messages and confirmed his intent to threaten to blow up the police station because he was angry. Likewise, the history and characteristics of the Defendant weigh against release; in this Court's words, "Defendant has a lengthy criminal history and multiple failures to appear and violations of supervision as set forth in the pre-trial report." Order of Detention [ECF #22]; 18 U.S.C. § 3142(g). There is also tangible danger to the people previously targeted by the Defendant if he is released without appropriate guard rails. 18 U.S.C. § 3142(g)(4).

No one, and especially not the Government, contests that the Defendant needs mental health support and treatment. Rather, the issue is how and when that treatment should occur. Due to the exceedingly worrying facts of this case, the Government continues to believe that a transition through an inpatient facility must be the first step. The Court, after considering all these factors, agreed that there must be an intervening step down from custody to be comfortable with the Defendant's release. [ECF #22] at 2. That continues to be the case.

*       *       *

For the reasons outlined above, the Government respectfully objects to the Defendant's release from detention under the proposed conditions of the Defendant.

Respectfully submitted this 11th day of August 2022

                              COLE FINEGAN
                              UNITED STATES ATTORNEY

By:  s/ *Jeffrey K. Graves*
Jeffrey K. Graves
Assistant United States Attorney
835 E 2nd Avenue, Suite 415
Durango, Colorado 81301
Telephone: (970) 247-1514
Email: jeffrey.graves@usdoj.gov
Attorney for the Government

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 11th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

    tomdgolaw@gmail.com

By: s/ *Jeffrey K. Graves*
Jeffrey K. Graves
Assistant United States Attorneys
835 E 2nd Avenue, Suite 410
Durango, Colorado 81301
Telephone: (970) 247-1514
Email: jeffrey.graves@usdoj.gov
Attorney for the Government